# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 7044 | **DATE** | 9/3/2002 |
| **CASE TITLE** | Cecil Watson vs. John F.Potter | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order: the Court finds that the total back pay and benefits due to the plaintiff are $74,893.66 plus prejudgment and post-judgment interest calculated as specified in Place v. Abbott Laboratories. Plaintiff is entitled to reasonable attorney fees that shall be determined by petition for attorneys' fees pursuant to Local Rule 54.3. The petition shall be filed on or before October 14, 2002. Watson is entitled to additional equitable relief in the form of retroactive seniority and placement into an EAS 21 position, back-pay with prejudgment and post-judgment interest and attorney's fees. Any pending Motions are moot and terminated. This action is closed.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | SEP 5 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 92 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| PAMF | courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| Cecil W. Watson | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| John E. Potter, Postmaster general of the United States. | ) |
| | ) |
| Defendant. | ) |

No. 96 C 7044

HONORABLE DAVID H. COAR

## MEMORANDUM OPINION AND ORDER

Before this court is the issue as to whether plaintiff Cecil Watson ("Watson") is entitled to additional equitable relief, and if so, which particular relief. Both parties have submitted post-trial briefs. For the following reasons, this court finds that Watson is entitled to additional equitable relief in the form of retroactive seniority and placement into an EAS 21 position, backpay with prejudgement and postjudgment interest, and attorney's fees.

### Background

This case has an unusual almost twelve year history. This suit was filed to enforce an OFO decision, dated July 30, 1996. That Order vacated the Postal Service Final Agency Decision ("FAD") of September 27, 1995 which had incorrectly determined that the agency had complied with its FAD of July 9, 1993 in accepting the EEOC's original determination of discrimination and order for relief.

The OFO ordered the Postal Service to provide a record, which would show, *inter a/ia,* "evidence addressing at which EAS level [Watson] would now be assigned if he had not been

1

wrongfully denied the position in 1990 and evidence showing that it had complied with the make-whole relief portion of the corrective action in the July 9, 1993 FAD." (July 30, 1996 OFO Order) Watson's suit was filed to enforce the OFO's Order to the Postal Service.

In Watson v. Henderson, 222 F.3d 320 (7th Cir. 2000), the Seventh Circuit Court of Appeals reversed this Court's earlier determination as to the benefits due Watson, including back pay and promotion, as the Court of Appeals found that Watson had not failed to exhaust his administrative remedies, and had preserved his request for additional relief. The Court of Appeals remanded for this Court to "determine whether Watson is entitled to additional relief, and if so to what particular relief." 222 F.3d at 323.

Due to the passage of time, this Court held a supplemental hearing to consider the issues in light of the current situation.

### Findings of Fact

1.      Plaintiff Cecil W. Watson ("Watson"), a black male, began his career with the Postal Service in 1984. 11/13/97 Tr. at 237.

2.      In April 1990, Watson was EAS-13 supervisor when he unsuccessfully applied for a promotion to an EAS- 16 Manager of Customer Services position at the River Forest Branch Office of the Oak Park Post Office. Stip. of Uncon. Facts at ¶ 1.[1] The Postal Service instead selected Mark Rosenwinkel ("Rosenwinkel"), a white male, for the promotion. Stip. of Uncon. Facts at ¶ 2.

3.      Watson filed an informal complaint of race discrimination against the Postal Service for
the failure to promote followed by a formal complaint of race discrimination on February 4,

---

[1] References to the Stipulation of Uncontested Facts contained in the Final Pretrial Order entered on June 21, 2001, are cited as "Stip. of Uncon. Facts at _.

1991. Stip. of Uncon. Facts at ¶ 2.

4. Seven months after Watson filed his charge of race discrimination, Watson applied for and was selected for the position of Superintendent, Stations Operations, grade level EAS- 15. Stip. of Uncon. Facts at ¶ 4.

5. Two years later, in 1993, Watson's charge of race discrimination was heard before an EEOC administrative judge; a month later, the EEOC administrative judge recommended a finding of race discrimination and make-whole relief for Watson. Stip. of Uncon. Facts at ¶ 3.[2] The Administrative Judge issued a recommended that Watson be offered the position of Manager, Station or Branch Operations (A), grade EAS-16, at River Forest, Illinois, effective April 7, 1990 or a position equivalent thereto, plus all benefits he would have received had he been promoted at the time of the discriminatory action.

6. In February 1993, as a result of a reorganization within the Postal Service, all level 13, 14 and 15 supervisors were upgraded in level to EAS-16. Had Watson remained at River Forest, the reorganization would have made him a supervisor Level 16 reporting to Rosenwinkel. At the time of the Administrative Judge's decision, Watson was a Level 16 supervisor.

7. In March 1993, Watson was reassigned from the Oak Park Post Office to the Addison Post Office as a Supervisor, Customer Services, grade level 16.

8. Had Watson been promoted in April 1990, he would have remained at River Forest as a Branch Manager.

9. In July 1993, the Postal Service accepted the EEOC's recommendation and issued a final agency decision ("FAD"). Stip. of Uncon. Facts at ¶ 8. The FAD contained two basic components: (1) placement of Watson in the position of "Manager Station/Branch Operations (A) EAS-16, at River Forest Branch Illinois or one equivalent thereto"; and (2) payment of back pay effective April 7, 1990.

10. In the FAD, the Postal Service determined that there existed no vacancies for the position of "Manager, Customer Services," grade EAS- 16, in the Northern Illinois District. The Postal Service then determined that Watson's current position as Supervisor, Customer Services, EAS-16, at the Addison Post Office was substantially equivalent to the position for which he had applied and been rejected, Manager, Customer Services, grade EAS-16, at River Forest. Implicitly, the Postal Service determined that the upgrade brought about by the reorganization satisfied its obligation under the FAD to promote Watson to a Branch Manager or equivalent position.

---

[2] In the same decision, the administrative judge rejected Watson's retaliation claim pertaining to an employment action unrelated to the promotion.

11.     In August 1993, the Postal Service calculated Watson's back pay, *i.e.,* what he would have received if he had received the promotion to the Branch Manager's job in April 1990, less what he actually received in salary and benefits until February 20, 1993. For purposes of the overtime component of his back pay, the Postal Service assumed that Watson would have worked the same number of overtime hours as did Rosenwinkel and purported to include the total amount of overtime compensation received by Rosenwinkel through July 1993, without reducing that amount by payments for overtime actually received by Watson during that period.

12.     Upon receiving the Postal Service's calculation of the overtime component of back pay in January 1994, Watson objected to the numbers and requested the back-up documentation. The Postal Service acted upon until May 1994, and in the interim, some of the documents were apparently destroyed.

13.     Watson had been a Supervisor, Customer Service, since 1993, and a grade level 16 since the postal reorganization in February 1993.

14.     On August 12, 1993, the plaintiff submitted a letter of appeal to the EEOC, Office of Federal Operations ("OFO"), in Washington, D.C., seeking to enforce defendant's full compliance with the FAD.

15.     On June 6, 1994, the OFO issued a decision finding the Postal Service in compliance with the July 9, 1993 FAD.

16.     On July 8, 1994, plaintiff filed with the OFO a Request for Reconsideration of its decision dated June 6, 1994.

18.     On July 7, 1995, the OFO granted plaintiffs request for reconsideration, reversed its June 6, 1994 decision as issued in error, and remanded the case to the Postal Service "to conduct a supplemental investigation to determine if the agency has complied with the order in its final decision."

19.     On September 27, 1995, the Postal Service adhered to its position that a Supervisor and Manager are equivalent, and issued a further FAD.

20.     On July 30, 1996, the Office of Federal Operations of the Equal Employment Opportunity Commission issued a decision vacating the Postal Service decision of September 27, 1995 that the Postal Service had complied with the July 9, 1993 FAD. In that decision, the OFO ordered the Postal Service to:

        (a)     Supplement the record with evidence that the Supervisor and Manager positions are equivalent;

        (b)     Supplement the record with evidence as to what EAS level Watson would now be assigned if he had not been wrongfully denied the position in 1990;

        (c)     Supplement the record with evidence that the Postal Service has complied

4

with the make-whole relief previously ordered.

21.     On October 28, 1996, plaintiff timely filed a complaint in district court seeking enforcement of the July 30, 1996 OFO and to compel Postal Service compliance with its July 9, 1993 FAD, thereby removing jurisdiction over the entire matter to this Court.

22.     This Court found in its Order of September 16, 1998 that the Postal Service has not complied with the July 9, 1993 FAD because the position of Supervisor, Customer Services is not substantially equivalent to the position of Manager, Customer Services at River Forest.

23.     In its Order of September 16, 1998, this Court found that Watson was entitled to receive an offer for a position as Manager, Customer Services, grade EAS- 17 in the Northern Illinois District at River Forest or another Northern Illinois District location, and if there is no vacancy to be offered, the next available Manager Customer Services position that becomes vacant within the Northern District or a substantial equivalent. In the interim, Watson's position was to be reclassified as Level 17.

24.     Watson as of the date of the supplemental hearing, on September 24-25, 2001, has not yet been offered any Manager, Customer Services position, or any substantial equivalent, and he remains in a supervisor's position as he has since the original discriminatory action of the Postal Service in 1990.

24.     In this Court's Order of September 16, 1998, the Court stated that the "Postal Service's obligation to place plaintiff in the same or substantially the same position continues until that task is done."

25.     In the September 16, 1998 Order, this Court found that Watson had failed to exhaust his administrative remedies, thereby forfeiting the make-whole back pay and benefits relief which had been ordered by the EEOC.

26.     Watson appealed this Order to the Seventh Circuit Court of Appeals, Watson v. Henderson, 222 F.3d 320 (7th Cir. 2000). The Postal Service, on appeal, conceded the unassailability of this Court's Order that Watson's Supervisor position was not substantially equivalent to a Manager position, and confessed error, 222 F.2d at 321, with respect to its argument that Watson had failed to exhaust administrative remedies. The Court of Appeals, therefore, reversed and remanded for additional findings as to Watson's entitlement to make-whole relief, back pay and benefits, and for the finding mandated by the EEOC as to Watson's position and level, had there been no discrimination. 222 F.3d at 323.

28.     This Court ordered a supplemental hearing to make these determinations on a current record and based upon a full factual examination.

29.     In March and April of 1994, the Postal Service paid Watson the overtime back pay ($11,937.36 before tax) and the interest owed on the back pay. For purposes of calculating

5

the overtime pay portion of the back pay, the Postal Service paid Watson 412.22 of overtime hours, which was the number of overtime hours worked by Rosenwinkel from April 1990 to July 1993, and did not reduce that number by the number of overtime hours Watson himself worked during that same period.

30.     Carol Deluttri called Watson in April 1999 and asked him to fill and EAS-17 manager position on a detail basis. Deluttri knew at the time of Watson's EEO activity. Watson refused that offer.

31.     Annie Adams reviews the official personnel files at the Addison Post Office before sending them to selecting officials for the purpose of removing items-from those files that should-not be there, including outdated disciplinary forms and EEO materials.

32.     In July 1999, Adams encouraged Watson to apply for a vacant EAS-19 manager position in Glendale Heights. Watson did not apply for that position.

33.     According to the Postal Service, between the time that the court entered its order in 1998 and today, no EAS-17 or EAS-18 manager of customer service positions have become available in the Northern Illinois District.

34.     The Postal Service now utilizes a detail mentoring program that was instituted in May 2000. Under that program, a roster of employees who indicated an interest in detail assignments was compiled and made available to officials seeking employees to fill positions on a temporary or detail basis. Details may be used for mentoring or growth of employees, and frequently employees are assigned to positions with higher levels than their permanent assignment. This provides the Postal Service with great flexibility when it wants to avoid the strictures of the permanent employment system.

35.     Details are created based upon (i) need, when there is no permanent position or insufficient permanent positions, and (ii) vacancies, when a permanent employee is absent ـon a detail, because of illness, or other reason. Details may last for years, or an employee may move on details, going from one to another for years.

36.     The detail system is subject to the regime of the Equal Opportunity laws and regulations no less than the permanent system of employment.

37.     Watson has not submitted an application to be part of the detail mentoring program.

38.     In June 2001 a manager of maintenance operations position became available, and that position was offered to Watson. Watson refused that offer. According to the Postal Service, this the only EAS-17 or EAS-18 manager position to become available since September 1998.

39.     Watson has not applied for an EAS-19 or higher manager position sine August

1997.

## Analysis

Before this court is the issue of whether Watson is entitled to additional relief under Title VII, and if so to what particular relief. See <u>Watson v. Henderson</u>, 222 F.3d 320, 323 (7th Cir. 2000). In this court's view, Watson is entitled to additional relief.

This Court retains jurisdiction and the obligation to award relief through the date of final judgment - and after, through the Court's contempt power. <u>Daniels v. Pipe Fitters Ass'n</u>, 113 F.3d 685 (7th Cir. 1997).

This court has broad discretion under the Title VII to order equitable relief as the court deems appropriate. The purpose of equitable relief is to restore victims of discrimination to a position where they would have been were it not for the unlawful discrimination. <u>Franks v. Bowman Transp. Co.</u>, 424 U.S. 747, 763-64 (1976). Equitable relief is also referred to as make-whole relief; relief that "is reasonably clear that, had it not been for the discriminatory behavior, the plaintiff would have got (or retained) the job or other employment benefit in issue, and where making the plaintiff whole would not unduly injure innocent third parties." <u>Evans v. City of Evanston</u>, 881 F.2d 382,386 (7th Cir. 1989). While broad in scope, equitable relief must not be based on undue speculation. <u>Place v. Abbott v. Laboratories, Inc.</u>, No. 94 C 5491, 1999 WL 301654, at *16 (N.D. Ill. Apr. 30, 1999)(Coar, J.), rev'd on other grounds 215 F. 3d 803 (7th Cir. 2000); <u>see also Downes v. Volkswagen of America, Inc.</u>, 41 F. 3d 1132, 1142 (7th Cir. 1994)(equitable relief to be awarded must be grounded in available facts and not highly speculative).

Given that in this case there has been an uncontested finding of a racially discriminatory

failure to promote by the Postal Service and in the current action the plaintiff is only seeking to

enforce an OFO Order requiring the Postal Service to provide evidence of its compliance with its

own FAD, the burden of proof of injury in this proceeding is on the Postal Service.

While the plaintiff must prove the specific amount of damages, the burden of persuasion

on the Postal Service as to the issue of injury is one of clear and convincing evidence. Cariale v.

State of Wisconsin, 744 F.2d 1289, 1294 (7th Cir. 1984).

This is fully supported in the law of this Circuit:

> But in the case of the statutory and constitutional torts of employment
> discrimination, the Supreme Court has held that the burden of proof on
> the issue of injury rests on the employer, the defendant, rather than on
> the employee, the plaintiff. If the plaintiff succeeds in proving that the
> employer violated the law, the latter can avoid having to pay damages
> or to provide other relief to the plaintiff only by proving that the plaintiff
> was not made worse off by the violation.

International Brhd. of Teamsters v.United States, 431 U.S. 324, 359, 362 (1977); Franks v.

Bowman Transportation Co., 424 U.S. 747, 772-73 (1976) 75 F.3d at 1202. Doll v. Brown, 75

F.3d 1200, 1202 ( 7th Cir. 1996).

In this case the Postal Service does not meet its burden.  The Postal Service maintains

that it has done all required of it, because there has been  no permanent job vacancy opening

which precisely matches the Manager of Customer Services, Level 17, which was previously

ordered in 1998 to be offered to Watson.  In addition, the Postal Service maintains that Watson

has waived his judicial remedies by failing to make applications for other postal positions.

Watson explains that he concluded that it would have been futile for him to seek

8

advancement through the application process because his Official Personal File (OPF) (specified to be consulted in hiring decisions by official Postal Service manuals) has contained numerous documents describing his EEOC activity. Watson complained of this situation in the first trial.

The Postal Service argues that the purpose of the "futility doctrine", as established by International Brotherhood of Teamsters, is only operates to prove liability, not calculate damages. In this court's view, however, several courts have utilized the futility doctrine to justify remedies such as "retroactive seniority" as possible relief to violations of Title VII. See EEOC v. United Air Lines, Inc., 560 F.2d 224,234 (7th Cir. 1977)( stating that "[p]ost-Act discriminatees, however, may obtain full 'make whole' relief, including retroactive seniority under Franks v. Bowman . . . without attacking the legality of the seniority system as it applied to them. Franks made clear that retroactive seniority may be awarded as relief from an employer's discriminatory hiring and assignment policies even if the seniority system agreement itself makes no provision for such relief."); Sands v. Runyon, 28 F.3d 1323, 1329 (2nd. Cir. 1994); Pecker v. Heckler, 801 F.2d 709 (4th Cir. 1986); Cross v. United States Postal Service, No. 77-613 C (1), 1983 WL 30353 (E.D. Mo. June 8, 1983), aff'd., 733 F.2d 1327 (8th Cir. 1984); Khanmann v. Reno, 928 F.Supp. 1209 (N.D.N.Y. 1996).

This court agrees with the plaintiff that retroactive seniority, i.e., retroactive promotion, also called 'job-skipping," is a possible remedy awarded to a victim of discrimination for whom an adjudication of relief has taken so much time that they would be occupying a more advanced position by the time of the award, if they are qualified, and generally, they have not applied for the advanced position because they had already been denied the lower level position. For example, in Pecker v. Heckler, 801 F.2d 709 (4th Cir. 1986), the plaintiff, classified at GS-8 in

the Social Security Administration, was discriminatorily denied a GS-10 position she applied for. She was ordered placed in a GS-11 position. Id. at 712. The Fourth Circuit cites authorities from five circuits endorsing, "In order to accomplish the broad remedial purposes of make whole relief under Title VII, courts have looked beyond the particular position or benefit that a plaintiff has been denied, in order to determine the relief to which the plaintiff is entitled." Id.

Consequently, this court finds that the "futility doctrine" can be used to prove damages. This court now addresses the question of whether Watson sufficiently makes a sufficient case for retroactive seniority in this case. Watson argues that had he not been discriminated against his career at the present time would be currently at an EAS level of 23.

Courts have examined the following criteria in awarding retroactive seniority: (1) particular skills and related qualifications; (2) line of progression; and (3) time spent in service at a lower position not justified by necessity.[3]

In addition, courts have held it may be reasonable to look to the career of the selectee in determining what the plaintiff's career path might have been in the absence of discrimination. In Walker v. Dalton, 89 F. Supp. 2d 20 (D. D.C. 2000), for example, the court enforced an EEOC order. The Navy had failed to complete the EEOC ordered "make whole relief" and abolished the position and failined to promote the plaintiff to a substantially similar position, the same position which the discriminatory selectee held:

> [T]he court concludes that defendant's liability for back pay ended
> not when the WS-10 position was abolished, but rather when plaintiff

---

[3] Cross v. United States Postal Service, No. 77-613 C (1), 1983 WL 30353 (E.D. Mo. June 8, 1983), aff'd., 733 F.2d 1327 (8th Cir. 1984).

was finally offered a substantially equivalent position. . .It is reasonable, albeit imprecise, to look to the career of the selectee in determining what plaintiffs career path might have been in the absence of discrimination.

Id. at25. [citations ommitted].

In this case, Watson argues that Senior Postal Service officials with personal knowledge of Watson and the positions in his line of progression, have attested to his qualification and ability to do the most advanced positions in his line of progression.

William Theriault, who had been the Manager of Post Office Operations for the Northern District of Illinois testified that he had had enough discussions with Watson and knowledge of the Addison operation to say whether Watson would be capable of performing a particular job. Theriault testified that Watson had the abilities to perform details as manager of customer services at level 20 or 21, and that he could perform postmaster positions or "anything in operations."

Further, Carol Dellutri ("Dellutri"), who was the Manager of Labor Relations for the Northern Illinois District Postal Service at the time of testifying, was familiar with Cecil Watson, had appraised his capabilities, and knew his background and experience. Ms. Dellutri was also familiar with Postal Service manager customer service positions because she had held that position. Ms. Dellutri testified that Watson could perform the duties of manager customer services at any EAS level. She also testified that he could perform the duties of an officer in charge, i.e., a postmaster on a detail basis.

Watson's argues that this testimony by Postal Service senior management supports his conclusion that, but for the discrimination, his career at the present time would be currently at an EAS level 23. This court finds, however, that the above testimony does not support that

11

conclusion. Rather, the above testimony supports an inference that with respect to qualifications and ability, Watson is capable of performing as a manager of customer service at 21.

Watson argues that EAS-23 is the proper level with which to compare his career potential because the individual who received the promotion which Watson was discriminatorily denied in 1990, Mark Rosenwinkel ("Rosenwinkel"), has progressed to an EAS 23 position as of August 1999. Rosenwinkel's pay was used by the Postal Service as the basis for payment of Mr. Watson through 1993, but the Postal Service now disavows him as a comparison employee. Rosenwinkel testified that he was in a line of progression upward from the manager-customer services position, that he "works on the delivery program staff to support programs and delivery operations," and advises operations managers, postmasters and delivery supervisors. Rosenwinkel was on details from his manager-customer services position for several years.

This court, however, has previously addressed Watson's argument that his relief should be based entirely on the career of Rosenwinkel:

> The testimony is clear that Mr. Rosenwinkel did not receive those details solely because of his position as a manager, and there are simply too many variables with respect to the assignment to details or appointment to details to equate Mr. Rosenwinkel's experiences with what Mr. Watson would have had but for the discrimination in 1990.

11/12/97 Transcript at 290. Given that Watson has not provided additional support for the conclusion that he would have risen to position of EAS 23, this court continues to find that there are many variables that prevent a direct comparison between the careers of Watson and Rosenwinkel. And therefore, relief for Watson cannot be completely derived from the path of Rosenwinkel.

The evidence before this court indicates that Watson is qualified for and should be placed in an EAS 21 position.

The Postal Service denies Watson's right to any relief because he did not make application for positions. Judgements ordering relief in form of 'job-shifting" and retroactive seniority, however, demonstrate that the Postal Service's argument is mistaken. The Postal Service has also failed to sustain its burden of proof that Watson "make-whole" relief should not include retroactive seniority by clear and convincing evidence.

This court is thus left with a situation for injunctive relief where the Postal Service has done very little to remedy Watson's situation, which has not changed, except for salary, for over eleven years. The Court has plenary power to order the Postal Service "to put [Watson] where he would be but for the violation," Doll v. Brown, 75 F.3d 1200, 1205 (7th Cir. 1996). After eleven years since the discrimination, and three years since the Court's original Order, this court agrees with the plaintiff that such retroactive relief does not seem to be draconian.

Consequently, this court finds that Watson's "make whole relief" includes immediately placing Watson in an EAS-21 level position and with commensurate salary.[4]

In addition, the EEOC awarded Watson make whole relief, including, but not limited to back pay and interest, which was accepted by the Postal Service, and mandated to be determined by this court. Watson v. Henderson, 222 F.3d 320 (7th Cir. 2000). Back pay relief is an equitable

---

[4] Watson additionally requests that this court order the Postal Service to provide Waston with training sufficient to prepare and qualify him for an EAS 23 position, to be awarded before some date. Given, however, that Watson has failed to prove that he is entitled to an EAS-23 position, this court has no basis upon which to order the Postal Service to provide such training. Moreover, Watson has not furnished the court with any evidence of how and where training could be provided.

13

remedy, and the common law requirement of "certainty" has never been applied to it. Williamson v. Handy Button Mach. Co., 817 F.2d 1290, 1299 (7th Cir. 1987). The Seventh Circuit has affirmed a back pay award, to which Title VII is applicable, upon evidence where, "[plaintiff] himself supplied most information and calculations." Pals v. Schepel Buick & GMC Truck, Inc., 270 F.3d 495, 499 (7th Cir. 2000). The Supreme Court has set the basic standard for devising back pay awards. A court must "as nearly as possible, recreate the conditions and relationships that would have been, had there been no unlawful discrimination." Franks v. Bowman Transp. Co., 424 U.S. 747, 769 (1976).

The Postal Service, when called upon to determine make-whole relief for Watson after the EEOC decision in 1993, used the method of making the determination by utilizing a "comparison employee" and chose the individual who had been promoted over Watson, Mark Rosenwinkel as the "comparison employee." (OFO Decision, July 30, 1996, p. 5) This method has previously been used in Title VII cases in which the Postal Service was defendant. Clarke v. Frank, 1991 U.S. Dist. LEXIS 7235, pp. 13-14 (E.D.N.Y. 1991), and in this District, Lewis v. Richheimer Coffee Co., 1984 U.S. Dist. LEXIS 18252 (N.D. Ill. 1984).

This method of back pay calculation is also well accepted over many years by the National Labor Relations Board, whose remedies served as a model for the development of remedies under Title VII. Pollard v. E. I. DuPont de Nemours & Co., 532 U.S. 843, 121 S.Ct. 1946, 1950 (June 4, 2001); Albermarle Paper Co. v. Moody, 422 U.S. 405, 419 (1975) 818 F.2d 517, 520 (6th Cir. 1987); NLRB v. Int'l Assn. Of Bridge, S. & R.I. Workers, Local 378, 532, F.2d 1241, 1242 n. 3 (9th Cir. 1976); NLRB v. Brown & Root, Inc., 311 F.2d 447 (8th Cir. 1963).

14

The court recognizes that in determining the amount of back pay, unrealistic exactitude is not required, and ambiguities in what an employee would have earned but for the discrimination are to be resolved against the employer. Richheimer, infra; Liberales v. County of Cook, 709 F.2d 1122, 1136 (7th Cir. 1983); Stewart v. General Motors Corp., 542 F.2d 445, 452 (7th Cir. 1976), cert. denied, 433 U.S. 919 (1977).

In this case, Watson argues that his back pay should be determined by comparing his salary to Rosenwinkel's salary every year and providing Watson with the difference. While this court recognizes that the Postal Service, when called upon to determine make-whole relief for Watson after the EEOC decision in 1993, used the method of making the determination by utilizing a "comparison employee" and chose the individual who had been promoted over Watson, Mark Rosenwinkel as the "comparison employee." (OFO Decision, July 30, 1996, p. 5), this court is not bound to the same method of calculation utilized by the postal service nor Watson's request.

In this court's view, Watson's request for backpay exceeds what is reasonable given the above findings. For the purposes of these calculations, this court will assume incremental increases in position and pay from 1993.

In 1993, Watson was level 16 supervisor at the Addison Post Office. He had just become a level 16 as a result of postal reorganization. Level 16 salary in 1993 was $42,909. Watson received this pay for 9 months of 1993 (Watson received three months of level 18 pay). This court agrees that had Watson been the Branch Manager at River Forest since 1990, Watson could have expected a level 17, step 9, pay grade resulting in base pay of $48,022 or a differential of $3,835, for the nine months that Watson was paid a level 16 salary. Additionally the court agrees

that a 20% benefit factor must be added to the difference, for a total for 1993 of $4,602.[5]

In 1994, Watson was a level 16 supervisor with an assumed base pay of $44,381. As a level 17 manager, Watson would have earned a base salary of $49,365, with benefits, a differential of $5,980.80. Given that Watson took 1300 hours of leave and was only eligible for up to 75% of his salary, his backpay must reflect this circumstance. Seventy-five percent of $49,365 plus an additional 20% for benefits equals $44,429. Consequently for the year 1994, Watson receives $475.00 in backpay.

In 1995, Watson was a level 16 supervisor, with an assumed step 5 base pay of $46,130. This court assumes that would have advanced one full step to a position of level 18 with a base salary of $48, 850, with benefits, a differential of $3,264.00

In 1996, Watson was a level 16 supervisor with base salary of $47,053. In a level 19 position, Watson would have received a salary would be around $55,410, producing a differential with benefits of $10,028.40

In 1997, Watson was a level 16 supervisor at a base salary level of $47,994. As a level 19 manager, Watson would have a base salary of $56,518, a differential with benefits of $10,228.80.

---

[5] The Postal Service argues that Watson's benefits calculations fail to take into account that at some point the benefits would cap out, and the 20% determinant would decrease as annual salary increased past a certain point. It also fails to account for certain benefits, such as health care benefits, that do not increase with an increase in salary, and others, such as Medicare and Social Security, that are not paid directly to him. The burden, however, in upon the Postal Service to supply information regarding at what salary the benefits would cap out and the percentage of those benefits that do not increase with salary. The Postal Service, however, has not done so, and therefore has failed to meet its burden to prove injury by clear and convincing evidence. Consequently, this court will assume a 20% benefits factor for the years that Watson receives backpay.

In 1998, Watson was paid part of the year a base salary of $47,994 as a level 16 supervisor, and after this Court's Order of September 16, 1998 was implemented, he was paid the remainder of the year at $52,724, a blended rate of $49,896. This court now entertains the reasonable assumption that Watson would have spent at least one year without promotion. Consequently, Watson's would have a base salary would have remained around of $56,518, resulting in a differential with benefits of $7,946.40..

In 1999, Watson was paid as a level 17 manager $52,724. As a level 20 manager,[6] Watson would have been paid a base salary of $63,728, with benefits, a differential of $13,204.80.

In 2000, Watson was paid as a level 17 manager $54,358. As level 21 manager, Watson would have been paid a base salary of $65,704 with benefits, a differential with benefits of $13,615.20.

In 2001, this court assumes that Watson goes another year (only second year in this hypothetical career) without promotion. Therefore, Watson has been paid to date at the level of $56,097. As level 21 manager, Watson would have been paid a base salary of $65,704 with benefits, a differential with benefits of $11,528.40.

The total back pay and benefits due are $74,893.66. Additionally, Watson is entitled to prejudgment interest for the award of all amounts of back pay. Loeffler v. Frank, 486 U.S. 549, 557 (1988) (Title VII authorizes prejudgment interest as part of the back pay remedy in suits against the United States Postal Service). The Court of Appeals for the Seventh Circuit holds

---

[6]For the purposes of these calculations this court will use the level 21 base salary, given that the court is unaware of the amount for a level 20 Postal Service employee.

"the Supreme Court has stated that it [prejudgment interest] is a 'normal incident' of relief in Title VII suits." United States EEOC v. Gurnee Inn Corp. 914 F.2d 815, 820 (7th Cir. 1990). And post-judgment interest is awarded pursuant to 28 U.S.C. §1961(a). The total back pay and benefits due are $74,893.66 plus prejudgment and post- judgment interest calculated as specified in Place v. Abbott Laboratories, 1999 U.S. Dist. LEXIS 11900, rev'd on other grounds, 215 F.3d 803 (7th Cir. 2000), cert. den., 121 St. Ct. 768 (2001).

Finally, attorneys' fees are properly awarded to a prevailing party against the Postal Service, Title VII §706(b), 42 U.S.C. §20000-5(b), Bailey v. Runyon, 220 F.3d 879, 882 (8th Cir. 2000); Brodziak v. Runyon, 145 F.3d 194 (4th Cir. 1998). Under the circumstances, plaintiff is entitled to reasonable attorneys' fees that shall be determined by petition for attorneys' fees pursuant to Local Rule 54.3. That petition is to be filed on or before October 14, 2002.

**Conclusion**

For the foregoing reasons, the  this court finds that Watson is entitled to additional

18

equitable relief in the form of retroactive seniority and placement into an EAS 21 position, backpay with prejudgement and postjudgment interest, and attorney's fees.

**Enter:**

_David H. Coar_

**United States District Judge**

**David. H. Coar**

Date: September 3, 2002